UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——————

JAMES POHUTSKI,

                           Plaintiff,                             Case No. 1:13-cv-28

v.                                                 Honorable Janet T. Neff

CORIZON HEALTH INC. et al.,

                           Defendants.

_____/

## <u>OPINION</u>

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Lananster and Corizon Health Inc.  The Court will serve the complaint against Defendants Galabert, Milliner, and Olette.

## Discussion

I.     Factual allegations

Plaintiff James Pohutski is a state prisoner incarcerated by the Michigan Department of Corrections (MDOC) at Charles Egeler Reception & Guidance Center (RGC), though the events about which he complains occurred while he was incarcerated at Florence Crane Correctional Facility (ACF), G. Robert Cotton Correctional Facility (JCF), and Cooper Street Correctional Facility (JCS). He sues Corizon Health Inc. ("Corizon") and its Director, Elisa A. Lananster. He also sues the following individuals: Dr. (unknown) Galabert, a physician at Lakeland Correctional Facility; (unknown) Olette, a Physician Assistant (PA) at JCF; and Dr. (unknown) Milliner, a physician at JCS.

According to the allegations of Plaintiff's *pro se* complaint, he was incarcerated by the MDOC in September 2008. At that time, he informed the staff at RGC that he has leukemia[1] and diabetes, and that he had undergone several surgeries, including a "[h]eart [b]ypass" and a "femor[]al artery bypass." (Compl., docket #1, Page ID#3.) Later that month, he was transferred to ACF and placed under the care of Dr. Galabert and PA Olette. Sometime later, he developed an infection in his right elbow. Olette attempted to alleviate the swelling in Plaintiff's elbow by "cutting in on it," but she was not successful. (*Id.*) She then sent Plaintiff back to his cell. Plaintiff asserts that she should have given him an antibiotic, because she knew that his leukemia had rendered his immune system was too weak to fight an infection.

Three days later, Plaintiff's entire right arm swelled to the "size of a watermelon." (*Id.*) Dr. Galabert examined Plaintiff and stated that he should be "'in the hospital getting I.V.

---

[1]Leukemia is a type of blood cancer that leads to an uncontrolled increase in the number of white blood cells. *Leukemia*, MedlinePlus Medical Encyclopedia, http://www.nlm.nih.gov/medlineplus/ency/article/001299.htm (last visited April 10, 2013).

antibiotics.'" (*Id.*) Plaintiff was then sent to the hospital for treatment, and he stayed there for eight days. He asserts that Olette's failure to properly treat him could have caused him to lose his entire arm.

During Plaintiff's incarceration at ACF, Defendants Galabert and Olette took blood from Plaintiff; he assumed that they were monitoring his white blood cell count. (*Id.*) When ACF closed in March 2011, Plaintiff was transferred to JCF. Olette also moved to JCF. At JCF, Plaintiff started experiencing pain in his legs, a symptom of his leukemia. Plaintiff met with a doctor at JCF regarding the issue, but the doctor did nothing to investigate the cause of his pain. Plaintiff asserts that Olette should have provided some "input" regarding his care, because she was working at the same facility. (*Id.*)

In June 2011, Plaintiff was transferred to JCS and placed under the care of Dr. Milliner. After a few days, Plaintiff met with Milliner and told him about the pain in his legs. Dr. Milliner drew some blood from Plaintiff, and Plaintiff assumed that he was checking Plaintiff's white blood cell count. A few days after his meeting with Milliner, Plaintiff started having vision problems. He was then sent to the medical unit, where he learned that his blood pressure was low.

The following day, Plaintiff nearly passed out while he as at work. Prison medical staff checked him, determined that his blood pressure was low, and then took him to a hospital. At the hospital, they discovered that Plaintiff's white blood cell count was very high. He was then "re-diagnosed" with acute lymphocytic leukemia (ALL).[2] (*Id.* at Page ID#4.) Two days later, he started receiving chemotherapy to treat his condition. The chemotherapy damaged his kidneys. Plaintiff

---

[2]"Acute lymphocytic leukemia (ALL) occurs when the . . . body produces a large number of immature white blood cells, called lymphocytes. . . . ALL prevents healthy blood cells from being made." *Acute lymphocytic leukemia (ALL)*, Medline Plus Medical Encyclopedia (last visited April 10, 2013).

asserts that Defendants' failure to monitor his white blood cell count and to treat his condition at an earlier stage allowed his white blood cell count to rise and deprived him of the opportunity to receive a form of treatment other than chemotherapy, such as the potentially curative use of healthy blood cells from "storage" or from one of Plaintiff's donors.  (*Id.*)  Plaintiff expects to have a shorter lifespan as a result of the ALL and the damage to his kidneys.

Plaintiff claims that Defendants have violated his rights under the Eighth Amendment.  As relief, he seeks damages in the amount of $50,000,000 and an injunction requiring the "Michigan Medical Board" to review "Defendants['] file" and take "whatever action that they deem just."  (*Id.*)

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A. Defendants Corizon & Lananster

Plaintiff does not expressly mention Defendants Corizon or Lananster in the body of the complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not

allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

Plaintiff may have sued Corizon or Lananster because they have control or authority over the individuals responsible for Plaintiff's medical care. Even if that is the case, however, Plaintiff does not state a claim. Liability under § 1983 must be based on more than the right to control subordinates. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). A party cannot be held liable under § 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Plaintiff has not alleged that Defendants Corizon or Lananster were personally involved in the events which form the basis for his claim. Thus, he does not state a claim against them.

**B.  Defendants Galabert, Olette & Milliner**

The Court concludes that Plaintiff's allegations suffice to warrant service of the complaint Defendants Galabert, Olette, and Milliner.  Thus, the Court will allow Plaintiff's claims against them to proceed.


## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Lananster and Corizon Health Inc. will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will allow service of the complaint against Defendants Galabert, Olette, and Milliner.

An Order consistent with this Opinion will be entered.


Dated:  May 3, 2013                        /s/ Janet T. Neff
                                           Janet T. Neff
                                           United States District Judge